STAMFORD APARTMENTS COMPANY *v.*
CITY OF STAMFORD
(12991)

PETERS, C. J., SHEA, CALLAHAN, BORDEN and STOUGHTON, Js.

Argued March 31—decision released May 26, 1987

*Alice L. Perry,* assistant corporation counsel, with whom, on the brief, was *Michael Gene Clear,* corporation counsel, for the appellant (defendant).

*Lawrence J. Merly,* with whom were *Joseph J. Tooher* and, on the brief, *Dominick M. Uva,* law student, for the appellee (plaintiff).

BORDEN, J. The defendant, the city of Stamford, appeals from the judgment of a state trial referee, acting as the trial court, reducing the assessed value of the plaintiff's property for the assessment dates October 1, 1981, through October 1, 1985. The defendant claims that the trial court erred: (1) in refusing to accord the defendant's valuation a presumption of correctness, and by not placing the burden of proof on the plaintiff as to the value of the property; (2) in placing the burden of proof on the defendant as to a claim of discriminatory assessment; (3) in placing the burden of proof on the defendant as to the issues of the highest and best use of the property, and of the most appropriate valuation method; (4) in disregarding the defendant's claimed overwhelming evidence as to fair market value; and (5) in disregarding a presumption in favor of the method of valuation used by the defendant's assessor, and in finding that the comparable sales method of valuation was inappropriate. We find no error.

The plaintiff appealed to the trial court, pursuant to General Statutes § 12-118, from the action of the board of tax review of the city of Stamford declining to reduce the valuation of the plaintiff's property from the valuation placed on it by the city tax assessor on the assessment list of October 1, 1981. By amendment to its complaint, the plaintiff incorporated the assessor's subsequent identical valuations of the property on the lists of October 1, 1982, through October 1, 1985. The plaintiff claimed that the valuations were grossly excessive and not in accordance with the applicable percentage of the property's true and actual value.

The trial court, hearing the case de novo; *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 421, 521 A.2d 569 (1987); *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 303, 397 A.2d 1367 (1978); found the following facts. The plaintiff's property consists of six five-story apartment buildings containing 330 apartments and 19,000 square feet of professional office space. It is located in a residential multi-family use zone. It has been used as rental apartment buildings continually from the date of construction through the date of the trial. The court further found that the highest and best use of the property was its actual use, namely, as rental apartments and offices. The court also found that the income capitalization approach, based on actual income, was the proper method of appraisal. The court accepted the opinion of the plaintiff's appraiser that the fair market value of the property was $7,500,000, yielding an assessed value, at 70 percent of fair market value, of $5,250,000.

The court rejected the defendant's claim that the highest and best use of the property was conversion to residential and office condominiums, and that it should be appraised on the basis of that use. The court also rejected the defendant's claim that the comparable sales method was the most appropriate method of valuation, and that based on this method, the fair market value of the property was $12,429,014, yielding an assessed value of $8,700,310. The court rejected an alternate appraisal offered by the defendant based on the capitalization of income approach.

The court rendered judgment sustaining the plaintiff's appeal and fixing the assessed value of the property at $5,525,000. After the court further articulated its decision in response to the defendant's request, this appeal followed.

## I

The defendant first claims that the court erred by not according to the defendant a presumption that its valuation was valid, and by not placing the burden of proof on the plaintiff. This claim is without merit.

It is true that when a property owner challenges the assessor's valuation, "the plaintiffs' burden . . . is a difficult one. '[P]roper *deference* must be given to the judgment and experience of assessors.' *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 668, 364 A.2d 178 (1975). 'The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes.' *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 86, 291 A.2d 715 (1971), quoting *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 675, 154 A.2d 608 (1959)." (Emphasis added.) *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 633–34 n.8, 438 A.2d 782 (1981). While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut.

In this case, moreover, no deference to the assessor's valuation was warranted. The record indicates that the appraiser employed by the defendant's assessor for purposes of the 1981 valuation arrived at that valuation by a cost of replacement method. Neither the assessor, nor the appraiser who valued the property in 1981 on the cost of replacement method testified at the trial. The defendant's appraiser who did testify at the trial,

however, agreed with the plaintiff's appraiser that the cost of replacement method was inappropriate. He arrived at a valuation comparable to that of the assessor in 1981 by an entirely different valuation route, namely, condominium conversion as the highest and best use coupled with comparable sales of other converted apartment buildings.

There is nothing in the trial court's memorandum of decision to suggest that it used an erroneous standard in evaluating the evidence and finding facts. By its finding as to the fair market value of the property, it implicitly found that the defendant had "substantially overvalued" the plaintiff's property and thus that "injustice and illegality result[ed]. . . . " Nor is there anything in the memorandum of decision to suggest that the court relieved the plaintiff of its burden to establish that the defendant's valuation was excessive, or that the court cast a burden of proof on the defendant.[1]

## II

The defendant next argues that the court erred by placing the burden on the defendant to disprove the plaintiff's claim of inequality of assessment, or discriminatory assessment, and by considering that claim as part of the fair market value issue. This claim is based on a gross misreading of the memorandum of decision.

---

[1] In response to the defendant's request for articulation as to "who had the burden of proof as to fair market value, highest and best use which is a component of fair market value, and the appropriateness of the methodology of appraisal," the court stated: "It is not the requirement of a request for articulation that the court meet every claim offered by the defendant nor provide a dissertation on the rule of burden of proof." If the defendant was dissatisfied with this response, it should have moved for review in this court pursuant to Practice Book § 4054 (formerly § 3108). See *Barnes* v. *Barnes,* 190 Conn. 491, 493 n.2, 460 A.2d 1302 (1983). Since the defendant did not move for review of the trial court's articulation, we have no reason to conclude that the court improperly allocated the burden of proof.

The defendant rests this argument on an isolated sentence in the memorandum of decision,[2] taken out of context, and on the court's response to the defendant's motion for articulation to explain that one sentence and its relation to whether the plaintiff or the defendant had the burden of proof.[3] Reading the sentence in its context and together with the court's articulation makes it quite clear that the court was discussing its reasons for rejecting the opinion of the defendant's appraiser that the highest and best use of the property was conversion to condominiums. The plaintiff concedes that it did not make any claim of discriminatory assessment. The court did not inject any such issue into the case, as the defendant implies, and did not impose any such burden of proof on the defendant.

### III

The defendant's next claim is that the court placed the burden on the defendant to prove the fair market

---

[2] The sentence in the memorandum of decision is as follows: "No evidence was produced as to how many multi-family units remained in rental status at that time." This sentence was, however, part of the following paragraph: "The defendant's appraiser based [his] testimony as to probability of conversion largely on the existence of 26 sales of multi-family units from August, 1977 to May, 1984. No evidence was produced as to how many multi-family units remained in rental status at that time. Also, it appears that few conversions were made or were probable around October, 1981, when this property was assessed, because of high interest rates and lack of sales. Nor was this property judged individually. No evidence was offered as to the probable cost of conversion, whether leases were such that enough units could be converted to make the project financially feasible or at what price any future condominiums could be sold. Unless such conditions were favorable to a profitable conversion, it is not probable that the owners would convert."

[3] The court's response to the defendant's motion for articulation in this regard was as follows: "Defendant's appraiser based much of his determination of highest and best use of the apartment in question on the analysis of 26 sales of rental apartments from 1979 to 1984. In order to evaluate this testimony fairly, the court should have been provided with evidence of how many rental apartments existed in Stamford between the above dates but were not converted to condominium use, how the rental apartments not converted compared to those converted and how both compare to plaintiff's premises. This he failed to do."

value of the property, including the burden of establishing the highest and best use of the property. This claim has two aspects. The first aspect simply seeks to persuade us that the court should have accepted the testimony of the defendant's appraiser rather than that of the plaintiff's appraiser as to the fair market value of the property. This argument is misplaced. The question of evaluating the credibility of the appraisers is for the trial court, not this court. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220–21, 435 A.2d 24 (1980); see also *Uniroyal, Inc.* v. *Board of Tax Review,* 174 Conn. 380, 387, 389 A.2d 734 (1978).

In the second aspect of this claim, the defendant asserts that the trial court improperly placed the burden of proof as to the highest and best use of the property on the defendant. This claim rests on another misreading of the memorandum of decision. At trial, it was the plaintiff's position that the highest and best use of the property was its actual use as apartment buildings with office space. It was the defendant's position that conversion of the property to condominiums was its highest and best use. The court stated that the "[a]ppraisers for both parties agreed that each property appraised must be judged individually and that to conclude that probability of conversion to condominiums existed, the purported change must be reasonably probable in the near future. *Budney* v. *Ives,* 156 Conn. 83, 88 [239 A.2d 482 (1968)]." The defendant does not take issue with this characterization of its appraiser's position. The question of the highest and best use of the property as a factor in the ultimate valuation of the property is an issue of fact for the trier, based on his evaluation of the testimony of the appraisers, the claims of the parties, his own general knowledge of the elements of value and any visual inspection of the property which he may have made. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. The

court found this fact in favor of the plaintiff. There is no basis in the memorandum of decision for the defendant's claim of an improper allocation of burden of proof on this issue. It is clear that the language to which the defendant points[4] is a statement of the trial court's reasons for rejecting the testimony of the defendant's appraiser on this issue, and does not indicate a misallocation of the burden of proof.

## IV

The defendant's next claim largely repeats its prior claims. The defendant argues that the court erred by disregarding what the defendant claims to be overwhelming evidence that if the property were sold it would be converted to condominiums, and by substituting instead the plaintiff's actual use for the highest and best use of the property as established by the defendant's evidence. We disagree. The court specifically found that there was no probability of conversion of the property to condominiums, and that its highest and best use was as rental apartments and offices. These findings were adequately supported by the testimony of the plaintiff's general partner and of the plaintiff's appraiser. The defendant would have us substitute our evaluation of the evidence for that of the trial court, which we will not do. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 220.

The defendant's final claim is that the trial court erred by finding that the comparable sales method of evaluation, offered by the defendant's appraiser, was

---

[4] The defendant apparently relies for this claim on the paragraph quoted at footnote 2, supra. That paragraph was followed by the following two paragraphs, which make its context even more clear: "There was evidence on the part of a witness for plaintiff that these items had been considered and found not to warrant conversion.

"The court finds that in October, 1981 and at present, no probability of conversion existed or exists as to the premises in question and their proper assessment should have been as rental apartments and offices."

inappropriate.[5] This claim is also bereft of merit. In arriving at an actual value of the property, the trial court had " 'the right to accept so much of the testimony of the experts *and the recognized appraisal methods which they employed* as [it] finds applicable . . . .' " (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 221, quoting *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977). The court in this case specifically found that the most appropriate method of valuation was the capitalization of actual net income method, and explained why it rejected the testimony of the defendant's appraiser. These findings are adequately supported by the evidence.

There is no error.

In this opinion the other justices concurred.

---

[5] In this claim of error, the defendant also reasserts its claims, which we have rejected, that the court disregarded a "presumption" in favor of the defendant's assessment, and that the court improperly placed a burden of proof on the defendant.